IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

    **v.**                                                     **CRIMINAL NO. 1:24-CR-09**
                                                                                            **(KLEEH)**

**ALEXANDER ALONSO GALINDO,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

Pending before the Court is a Report and Recommendation ("R&R") by the Magistrate Judge recommending that the Court deny Defendant's motion to suppress. For the reasons discussed herein, the R&R is **GRANTED IN PART** and **DENIED IN PART**, and the motion to suppress is **DENIED**.

I.    BACKGROUND

On March 5, 2024, the grand jury returned a one-count Indictment charging Defendant with Unlawful Possession of a Firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). The evidence forming the basis of charge stems from a traffic stop that took place on January 31, 2023. Defendant has moved to suppress the evidence seized during the traffic stop, arguing that it was unlawfully obtained. The Court referred the motion to suppress to the Magistrate Judge, who

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

held a hearing on the motion and entered an R&R recommending that it be denied.  Defendant timely filed objections to the R&R.

## II.   FACTS

The Court finds the following facts based on the testimony and arguments at the suppression hearing, the parties' briefs, and the exhibits to both the hearing and briefs.

On January 31, 2023, West Virginia State Troopers Tyquan Roach ("Roach") and Devon Goodman ("Goodman") (together, the "Officers") were working the night shift, from 2:00 p.m. to midnight.  At approximately 8:45 p.m., they were on patrol.  Roach was driving, and Goodman was in the passenger seat.  It was dark and cold, and it was not snowing.  Their vehicle was not equipped with a dash camera.  Roach was wearing an operational, functional body camera.

As the Officers approached an intersection, Roach noticed a stationary vehicle situated at a green traffic light with its brake lights illuminated.  From the time when the Officers first observed the vehicle, it remained stationary for at least 10 seconds.[1]  There was no other traffic in the area, and the Officers' view of the intersection was unobstructed.  When the vehicle began to move,

---

[1] Roach testified that the vehicle remained stationary for 15-20 seconds.  Goodman, who noticed the vehicle after Roach did, testified that it remained stationary for 10 seconds or longer.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

Roach followed it. At another intersection, Roach again observed the light turn green and observed the vehicle remain stationary — this time, for approximately 3-4 seconds.[2] When the vehicle began to move again, Roach activated his siren and lights and initiated a traffic stop. Roach and the vehicle pulled into a Go-Mart parking lot.

Roach walked to the vehicle. The temperature outside was approximately 15 to 18 degrees. The vehicle was covered in frost, which made it difficult to look inside. Defendant (the driver)

---

[2] In Roach's *Report of Criminal Investigation*, he stated, "The undersigned officer and S/Trp. Goodman observed the suspect vehicle . . . remain stationary at a green illuminated traffic control device. The undersigned officer observed the suspect vehicle remain stationary for several seconds as officer's vehicle approached the rear." See ECF No. 40-19. During the suppression hearing, Roach testified that each sentence relates to a different green light, and he acknowledged that he could have been more clear when drafting his report. He testified that the first sentence refers to the first, longer, 15-20 second stop at a green light, while the second sentence refers to the second, shorter stop at a green light. Defense counsel argues that the entirety of the report refers to the second, shorter stop at a green light, and Roach's testimony about an earlier, longer stop should be discredited. Defense counsel also points out that the earlier, longer stop is not depicted on the body camera. The Court finds that although the report is not clearly drafted, it is possible that that it describes two different delays, as Roach has testified. When considering this possibility, along with both Roach's and Goodman's sworn testimony, the Court finds that Defendant paused at two green lights: at one light for at least 10 seconds (intersection of Barnett's Run Road and Meadowbrook Road) and at another for at least 3-4 seconds (intersection of Johnson Ave. and the northbound entrance of I-79).

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

was the only individual in the vehicle. Roach asked him for his vehicle registration, his operator's license, and proof of insurance. Defendant said that he "had no idea" where the items were.

Roach observed Defendant making "lots of movements" after being told not to search around the car. At some point during the stop, Roach observed Defendant's hand moving toward his pocket, between the center console and his seat, and near the passenger seat. Roach asked Defendant to stop moving his hands. Defendant did not maintain eye contact except for the first few seconds of the interaction. Roach did not notice that Defendant's breathing was rapid or notice anything unusual about Defendant's breathing. He asked Defendant to step out of the vehicle.

Defendant did not immediately exit the vehicle when asked to do so. Defendant asked the Officers why he was being asked to exit the vehicle, and Roach told him that it was because of his failure to produce his documentation. Defendant was asked approximately five more times to exit the vehicle. He ultimately complied when the Officers told him that he would be removed from the vehicle if he did not comply. Roach opened the door to the vehicle and observed that Defendant had his arms crossed, was looking forward, and was behaving uncooperatively. When Defendant

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

exited the vehicle, Roach turned Defendant's back to him to comply with officer safety protocol. Roach asked Defendant if he had a weapon on his person or in the vehicle, and he answered that he did not. Roach did not have any information about Defendant's identity.

Roach then conducted a pat-down search of Defendant. He conducted the pat-down due to safety concerns. Roach testified that his safety concerns stemmed from the following: not knowing Defendant's name, Defendant's failure to obey commands, Defendant's unwillingness to identify himself, and Roach's desire to confirm that there were no weapons on Defendant's person. Roach still had difficulty seeing into the vehicle.

When Roach conducted the pat-down, he felt what he thought was a folded pocketknife in Defendant's left pocket. He also believed that he felt something sharp in a middle pocket of Defendant's hoodie. Roach reached into Defendant's pockets. In the pockets, Roach found an extra-large flat sharpie permanent marker, a taped-up metal smoking device with a sharp edge on it, and a bag of assorted pills. Roach asked Defendant what the pills were, and Defendant responded that the pills were Adderall. At this point, Defendant stopped speaking to Roach. Roach found a

Case 1:24-cr-00009-TSK-MJA    Document 49    Filed 12/09/24    Page 6 of 17  PageID #: 195

USA V. GALINDO                                                    1:24-CR-09

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

pipe-like device in a pocket within the waistband pocket of the hoodie.

Roach questioned Defendant about the objects found in his pockets. Defendant informed the Officers that they would "find it all" and that Defendant "smokes it all." Roach asked what Defendant smoked in the pipe, and Defendant answered that he smoked methamphetamine. Roach asked Defendant when he last smoked, and Defendant answered that it was a couple of hours before the stop. At some point, Defendant identified himself.

During the pat-down search, the driver's side door was completely open. The open door gave Roach an unobstructed view inside the vehicle. Roach observed a Ziploc bag with white powder inside the driver's door in plain view. Roach removed the bag and placed it on the hood of the vehicle along with other items that had been obtained. Roach escorted Defendant to the police vehicle and informed him why he was being detained.

Roach conducted a field sobriety test because Defendant admitted to using methamphetamine and Roach perceived that his reactions were slow. While Roach conducted the field sobriety test, Goodman searched the vehicle. After finishing the field sobriety test, Roach joined Goodman in searching the vehicle. During the search, Roach and Goodman located Defendant's

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

operator's license. The license showed a photograph and Defendant's name. Roach requested that dispatch run a criminal history check on the license's owner. Dispatch confirmed that the license was valid.

Goodman found a firearm in a backpack on the passenger seat of the vehicle. The firearm was loaded with one bullet in the chamber, and its magazine was full of ammunition. In the vehicle, Roach and Goodman also found a variety of controlled substances, a cell phone, and multiple smoking devices. The controlled substances were mushrooms, baggies of white powder that field-tested positive for fentanyl, substances that field-tested positive as cocaine, vape pens, suspected marijuana, and a variety of pills. During the stop, dispatch advised Roach that Defendant has a criminal history consisting of felonies, which prohibited him from possessing a firearm. Roach and Goodman collected the evidence gathered at this point and placed the assorted items into evidence bags. Defendant was arrested.

### III. REPORT AND RECOMMENDATION AND OBJECTIONS

In Defendant's motion to suppress, he argues that the traffic stop and the pat-down were illegal. In the R&R, the Magistrate Judge disagreed, finding that both were lawful. The R&R provided that the parties had 14 days from service of the R&R to file

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

"specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection." Defendant timely filed objections, challenging the legality of the traffic stop and the pat-down, along with some of the Magistrate Judge's factual findings. Due to the breadth of Defendant's objections, the Court conducts a <u>de novo</u> review of the R&R.

## IV. <u>DISCUSSION</u>

Defendant argues that the stop and the ensuing pat-down search were unconstitutional. Specifically, he argues that the alleged delayed movements at green lights were insufficient to support a traffic stop. He argues that the pat-down search was improper because the Officers possessed no objective reason to believe that Defendant was armed and dangerous. In response, the Government argues that the delays at green lights constituted traffic violations and justified a traffic stop. The Government argues that the pat-down search was justified because Defendant displayed visible and objective signs of nervousness.

After considering the parties' briefs, their arguments, and all testimony and evidence introduced at the suppression hearing, the Court finds that the initial traffic stop was lawful, but the Officers did not have an objectively reasonable belief that

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

Defendant was armed and dangerous. Still, the evidence at issue will not be suppressed because it would have inevitably been discovered.

> **A.   The traffic stop was lawful because Defendant committed a traffic violation.**

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated." U.S. Const. amend. IV. It is well-established that "[a] traffic stop is a 'seizure' within the meaning of the Fourth Amendment and must be reasonable under the circumstances." United States v. Palmer, 820 F.3d 640, 648 (4th Cir. 2016) (citing Delaware v. Prouse, 440 U.S. 648, 653-54 (1979)). A seizure, such as a traffic stop, must be supported by "a 'reasonable suspicion,' based on articulable, particularized facts, that 'criminal activity may be afoot.'" United States v. McCoy, 513 F.3d 405, 410-11 (4th Cir. 2008) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred," and any ulterior motive is irrelevant. See Whren v. United States, 517 U.S. 806, 810 (1996);

Case 1:24-cr-00009-TSK-MJA   Document 49   Filed 12/09/24   Page 10 of 17   PageID #: 199

USA V. GALINDO                                                    1:24-CR-09

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

see also United States v. Palmer, 820 F.3d 640, 649 (4th Cir. 2016) (stating that a traffic stop is reasonable at the outset "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation" and that "[w]ithout question, such a violation may include failure to comply with traffic laws") (internal citation and quotation omitted).

West Virginia law provides, "The driver of any vehicle . . . shall obey the instructions of any official traffic-control device applicable thereto placed in accordance with the provisions of [Chapter 17C]." W. Va. Code § 17C-3-4(a). In this instance, obeying the instructions of the traffic control device meant moving forward when the light turned green. While section 17C-3-4(a) does not specify how quickly a driver must begin to move forward, the Court believes that failing to move forward at a green light for 10 seconds (or more) would constitute a failure to comply with state code. Accordingly, the Court agrees with the Magistrate Judge that Defendant committed at least one traffic violation, and, therefore, the stop itself was justified.

> **B.   The pat-down was unlawful because the Officers did not have an objectively reasonable belief that Defendant was armed and dangerous.**

The Magistrate Judge concluded that the pat-down was lawful because (1) Defendant did not know where his documentation was,

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

(2) Defendant failed to comply with Roach's commands to step out of the vehicle, (3) it was difficult to see inside the vehicle due to weather conditions and the time of night, and (4) Defendant was moving when he was inside the vehicle. Respectfully, this Court disagrees with the Magistrate Judge's conclusion and does not believe that the Government produced sufficient evidence to justify the pat-down search.

In Terry v. Ohio, the Supreme Court held that during a traffic stop, if an officer reasonably believes that an individual may be "armed and dangerous," the officer is entitled to frisk the individual for weapons. 392 U.S. at 27. "The reasonableness of the search is measured objectively. If a reasonably prudent person would believe that his safety, or the safety of others, is endangered, he may conduct a limited search of outer clothing to discover any weapons." United States v. Raymond, 152 F.3d 309, 312 (4th Cir. 1998) (citing Terry, 392 U.S. at 27).

First, in finding that the frisk was justified, the Magistrate Judge noted that Defendant did not know where his documentation was. In his objections, Defendant writes that he was being "up front" with Officers by telling them that he "had no idea" where the documentation was. The Court agrees with Defendant's interpretation of this fact. The fact that Defendant did not know

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

where his documentation was, even in combination with other factors, does not support a finding that Defendant was armed and dangerous.

Second, in finding that the frisk was justified, the Magistrate Judge cited Defendant's failure to comply with the Officers' directives to exit the car, relying on United States v. Barnes, 153 F. App'x 232 (4th Cir. 2005). The Magistrate Judge is correct that an individual's failure to comply with an officer's order to exit a vehicle is a proper factor to consider when determining the reasonableness of a pat-down search. See Barnes, 153 F. App'x at 235. The circumstances in Barnes, however, were much different. In Barnes, law enforcement was responding to a dispatch call for an aggravated assault. Id. at 233. The court considered the following factors in finding that a Terry frisk of Barnes was justified:

> (1) the report of a gun assault; (2) an anonymous tipster stating that the officers had just passed the individual with the gun and that he was getting into a green Toyota Camry; (3) Barnes' failure to comply with [the officer's] directive to get out of the vehicle; and (4) Barnes' motion that suggested he was reaching under the front seat of the car.

Id. at 234. Here, there were no reports of an aggravated assault

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

or presence of a firearm. While Defendant's refusal to exit the vehicle weighs slightly in favor of a finding that he was armed and dangerous, it does not weigh as heavily in that direction as it did in Barnes.

Third, in finding that the frisk was justified, the Magistrate Judge cited the weather conditions and the time of day. Specifically, the Magistrate Judge noted that it was difficult for Roach to see Defendant in the vehicle and that the windows were partially obscured by moisture. The Magistrate Judge also noted that the traffic stop was conducted around 8:46 p.m., and it was dark outside. The Court disagrees with the Magistrate Judge's conclusion here and finds that these facts do not weigh in favor of a Terry frisk. Dark and moist weather conditions, even combined with the other factors here, do not make it more likely that Defendant was armed and dangerous.

Fourth, in finding that the frisk was justified, the Magistrate Judge noted that Defendant was moving inside the vehicle. The Magistrate Judge, however, does not rely strongly on this fact, writing, "While suspicious motions can be a factor in the totality of the circumstances, the undersigned attributes more weight to the above-noted factors." R&R, ECF No. 41, at 22. It is true that suspicious movements can, in combination with other

Case 1:24-cr-00009-TSK-MJA    Document 49    Filed 12/09/24    Page 14 of 17 PageID #: 203

USA V. GALINDO                                                    1:24-CR-09

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

factors, support a Terry frisk. In Barnes, the court considered suspicious movements in its analysis, but Barnes was reaching under the seat, which is more indicative of danger than the movements observed here. There is no indication here that Defendant's movements were linked to danger.

After analyzing the facts established during the suppression hearing and assessed by the Magistrate Judge, there are only two pieces of evidence that could lead to a finding that Defendant was armed and dangerous: (1) his refusal to exit the vehicle, and (2) his movements while he was sitting in the vehicle. Assessing the totality of the circumstances, and with no other indicia of danger in this case, the Court cannot find that the Officers had an objectively reasonable belief that Defendant was armed and dangerous. Accordingly, the pat-down was unconstitutional.

   C.  **The evidence at issue would have inevitably been discovered because incriminating evidence was in plain view, giving the Officers probable cause to search the vehicle.**

"The inevitable-discovery doctrine . . . allows the government to use information obtained from an otherwise unreasonable search if it can establish by a preponderance of the evidence that law enforcement would have ultimately or inevitably discovered the evidence by lawful means." United States v.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

Bullette, 854 F.3d 261, 265 (4th Cir. 2017) (quotation marks and citations omitted).  "Lawful means include an inevitable search falling within an exception to the warrant requirement."  Id. (quotation marks and citation omitted).  "The plain view doctrine authorizes warrantless seizures of incriminating evidence when (1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent."  United States v. Jackson, 131 F.3d 1105, 1109 (4th Cir. 1997) (citations omitted).

Here, as discussed above, the traffic stop itself was lawful. Roach then lawfully approached Defendant's vehicle and asked Defendant to exit the vehicle.  See Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."). Defendant eventually complied and exited.  While the door was open, Roach observed a bag of white powder inside the driver's door. The incriminating character of the bag was readily apparent.

After Roach observed the bag of powder in plain view, he had probable cause to search Defendant's vehicle under the automobile

Case 1:24-cr-00009-TSK-MJA   Document 49   Filed 12/09/24   Page 16 of 17 PageID #: 205

USA V. GALINDO                                                    1:24-CR-09

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

exception. See Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more.") (citation omitted). The search of the vehicle yielded an illegal firearm, along with multiple varieties of illegal controlled substances. At that time, Roach would have had probable cause to arrest Defendant for possession of the items, which would have resulted in a search of Defendant's person. See United States v. Currence, 446 F.3d 554, 556 (4th Cir. 2006) (explaining that a search incident to arrest is a lawful exception to the warrant requirement, and law enforcement may search an arrestee's person and the immediate area of their control). The search of Defendant's person would have produced the drug paraphernalia, pills, and Sharpie found during the pat-down. Accordingly, all evidence in the vehicle and on Defendant's person would have inevitably been discovered, and the evidence will not be suppressed.

## V.   CONCLUSION

For the reasons discussed above, the R&R is **ADOPTED IN PART** and **REJECTED IN PART** [ECF No. 41], to the extent consistent with this Memorandum Opinion and Order, and Defendant's motion to suppress is **DENIED** [ECF No. 28].

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART REPORT AND RECOMMENDATION [ECF NO. 41]
AND DENYING MOTION TO SUPPRESS [ECF NO. 28]**

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: December 9, 2024

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA